**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| | ) | |
| SAMUEL KARP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 21-1357 (ABJ) |
| | ) | ***UNDER SEAL*** |
| PENSION BENEFIT | ) | |
| GUARANTY CORPORATION, | ) | |
| *as Statutory Trustee of the* | ) | |
| *Kachay Homes, Inc. Defined* | ) | |
| *Benefit Pension Plan*, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION**

Plaintiff Samuel Karp, proceeding *pro se*, has sued defendant Pension Benefit Guaranty Corporation ("PBGC").  He alleges that the agency's decision to uphold PBGC's benefit determination as to the effective date of his reduction in benefits was arbitrary and that he is entitled to repayment from defendant.  Compl. [Dkt. # 1].  Defendant has moved for summary judgment, Def.'s Mot. for Summ. J. [Dkt. # 13] ("Def.'s Mot."), and the motion is before the Court for decision.  *See* Opp. to Mot. for Summ. J. [Dkt. # 15] ("Opp."); Def.'s Reply Brief [Dkt. # 16] ("Reply").  The Court finds that the agency's decision was reasonable and supported by the administrative record and therefore grants defendant's motion.

**BACKGROUND**

PBGC is the federal corporation that administers the mandatory federal pension insurance program established by Title IV of the Employee Retirement Income Security Act of 1974

("ERISA"), 29 U.S.C. § 1301 *et seq.* Admin. Record ("AR") 1;[1] Def.'s Mot. at 1. When a plan

sponsor is unable to support a covered pension plan, PBGC becomes the trustee of the plan, and it

pays guaranteed benefits to participants and their beneficiaries. AR 1; Def.'s Mot. at 2.

Plaintiff started working for Kachay Homes, Inc. ("Kachay Homes"), a luxury real estate

developer and contractor, on January 29, 1992, and he was a 5% owner. AR 1–2; Compl. ¶¶ 3–5;

Def.'s Mot. at 2. On December 1, 2002, Kachay Homes established the Kachay Defined Benefit

Pension Plan ("the Plan") to provide benefits to certain employees of Kachay Homes and its

affiliates. AR 1–2. Plaintiff and his wife were participants in the Plan, and he was also a fiduciary.

AR 2. On August 7, 2013, PBGC issued a notice of determination stating that "the Plan had not

met the minimum funding standards under section 412 of the Internal Revenue Code and that the

Plan would be unable to pay benefits when due." AR 2. The Notice also announced that the Plan

would terminate on February 4, 2013 by agreement with the Plan's administrator. AR 2. The Plan

did not have sufficient assets for the benefits it had been created to provide, so PBGC became the

statutory trustee of the Plan on August 15, 2013. AR 2.

On August 1, 2014, PBGC began paying plaintiff an estimated monthly benefit of

$3,502.89. AR 2, 237. In a July 7, 2014 letter, PBGC informed plaintiff that this amount was

merely an estimate, pending the completion of PBGC's review of the Plan's terms and the Plan

sponsor's records, after which it would notify plaintiff of its benefit determination. AR 237.

PBGC's letter noted that if plaintiff "received amounts that were greater than what Congress

allows [PBGC] to pay, [PBGC] will reduce [plaintiff's] future benefit to account for those

---

1    The administrative record appears on the docket. *See* AR [Dkt. # 12]. When referring to a
document in the administrative record, the Court will use "AR" and the Bates number of the
document.

amounts." AR 237.  Because plaintiff reached his required beginning date ("RBD") [2] on April 1,

2011, he was also entitled to back payment of the estimated monthly benefit for the time between

his RBD and August 1, 2014.  AR 2–3, 237.  PBGC paid plaintiff $61,282.95 on July 1, 2015 and

$89,398.87 on July 1, 2018.  AR 3, 174, 202.

On March 30, 2018, PBGC brought an action against plaintiff and his wife for breaches of

their fiduciary duties.  AR 3.  That action resulted in a July 19, 2019 settlement agreement

("Settlement Agreement"), in which plaintiff agreed that the monthly benefit he was entitled to

receive under the Plan "will be permanently reduced by the actuarial equivalent of $175,000."  AR

3, 155–157.  Moreover, the Settlement Agreement stated that plaintiff "may not contest the

reduction of his Pension Plan benefit."  AR 3, 157.  The Settlement Agreement also stated: "based

on its current review of Pension Plan records, PBGC has calculated that Samuel Karp is entitled

to receive a monthly benefit of $4,334.72" and that he would receive a final benefit determination

from PBGC.  AR 4, 155.

On August 12, 2019, PBGC informed plaintiff of its final determination that he was entitled

to a monthly payment of $3,210.17, which was less than the $3,502.89 estimated benefit he had

been receiving since August 1, 2014 (and the estimate used to calculate his backpay since his

RBD).  AR 4, 150.  The letter transmitted a benefit determination statement dated April 8, 2019,

detailing how the amount had been calculated: it indicated that $1,124.55 was to be deducted from

the most recent estimate of what plaintiff's monthly benefit would be, $4,334.72, to account for

the $175,000 he owed under the Settlement Agreement.  AR 4, 154.  The final determination letter

also stated that given these figures, plaintiff had been overpaid in the amount of $31,059.81, so his

---

2        A required beginning date ("RBD") means April 1 of the calendar year following the date
that a covered employee reaches the age of 70.5.  Compl. ¶ 9; Def.'s Mot. at 3 (citing 26 U.S.C.
§ 1.401(a)(9)).  Plaintiff's RBD was April 1, 2011.  Compl. ¶ 9; Def.'s Mot. at 10.

future benefit payments must be decreased by 5.35% to collect the overpayment. AR 4, 150–151.

PBGC noted that the reduction would apply to plaintiff's current monthly benefit and any future

benefits. AR 151. Thus, the monthly amount plaintiff would receive with the reduction applied

was $3,038.43, beginning with his payment on November 1, 2019. AR 151.

Plaintiff filed a timely appeal to PBGC on September 6, 2019 asserting that his monthly

benefit from April 1, 2011 (his RBD) until November 1, 2019 was $4,334.72. AR 26. He agreed

that his monthly benefit should be reduced by $1,124.55 under the terms of the Settlement

Agreement, but he argued that the reduction did not become effective until November 1, 2019, the

effective date of plaintiff's reduced benefit according to the final benefit determination letter, so

he was entitled to underpayment in a lump sum of $85,678.49 plus interest. AR 29, 30.

On January 8, 2020, PBGC's Appeals Board ("Board") upheld the agency's determination

and denied plaintiff's appeal.[3] AR 1–10. The Board stated that plaintiff "fail[ed] to cite a single

provision" in the Settlement Agreement supporting his claim that the reduction of $1,124.55

should start on November 1, 2019, and it pointed out that the Settlement Agreement "expressly

states that the monthly benefit [plaintiff] is entitled to receive from PBGC will be permanently

reduced by the actuarial equivalent of $175,000." AR 6 (internal quotations omitted). The Board

also emphasized that PBGC had been paying plaintiff's monthly benefit "on an estimated basis,

commencing as of his required beginning date, as required by the Plan and the Code." AR 6.

Because the Settlement Agreement "expressly precludes Mr. Karp from contesting the reduction

of his Pension Plan benefit," the Board further held that by challenging the effective date of the

---

3    The Board held that PBGC properly calculated the final benefit determination to be
$3,210.17 monthly, deducted by 5.35% each month to recoup the overpayment, which equates to
a monthly benefit of $3,038.43. AR 9–10.

reduction, plaintiff's appeal was in essence a prohibited effort to challenge the reduction itself. AR 6–7.

With respect to plaintiff's overpayment, the Board concluded that PBGC's final determination correctly calculated the net overpayment to be $31,059.81 and directed the Office of Benefits Administration to confirm the accuracy of this amount. AR 7–8. The Board explained that when PBGC pays out benefits greater than what ERISA would allow, it must recoup the net overpayment, generally by no more than a 10% reduction of monthly benefits until the overpayment is repaid. AR 9. Because PBGC calculated the reduction to be 5.35%, the Board found the proposed recoupment to be consistent with PBGC's regulations. AR 9.

On October 27, 2020, plaintiff filed a complaint in the U.S. District Court for the Southern District of California seeking judicial review of the Board's decision. Compl. ¶ 22. Defendant moved to dismiss the case or alternatively, to transfer venue. Def.'s Mot. to Dismiss or Transfer Venue [Dkt. # 4]. Plaintiff later consented to transfer the action to this Court, and the case was transferred on March 29, 2021. Joint Mot. to Transfer Venue [Dkt. # 5]; Order Granting Joint Mot. to Transfer Venue [Dkt. # 6].

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings and evidence show that "there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In cases involving the review of agency action under the Administrative Procedure Act ("APA"), Rule 56 does not apply due to the Court's limited role in reviewing the administrative record. *Select Specialty Hosp.–Akron, LLC v. Sebelius*, 820 F. Supp. 2d 13, 21 (D.D.C. 2011). Under the APA, the agency's role is to resolve factual issues and arrive at a decision that is supported by the administrative record, and the court's role is to "determine

whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769 (9th Cir. 1985), citing *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971); *see also Richards v. INS*, 554 F.2d 1173, 1177 & n.28 (D.C. Cir. 1977).

Under the APA, a court must "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), in excess of statutory authority, *id.* § 706(2)(C), or "without observance of procedure required by law." *Id.* § 706(2)(D). However, the scope of review is narrow. *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). The agency's decision is presumed to be valid, *see Citizens to Preserve Overton Park*, 401 U.S. at 415, and the court must not "substitute its judgment for that of the agency." *State Farm*, 463 U.S. at 43. A court must be satisfied, though, that the agency has examined the relevant data and articulated a satisfactory explanation for its action, "including a rational connection between the facts found and the choice made." *Alpharma, Inc. v. Leavitt*, 460 F.3d 1, 6 (D.C. Cir. 2006) (citations omitted) (internal quotation marks omitted).

Finally, when a plaintiff proceeds *pro se*, the Court must take care to construe plaintiff's filings liberally, because complaints filed by *pro se* litigants are held to less stringent standards than formal pleadings drafted by lawyers. *See Schnitzler v. United States*, 761 F.3d 33, 38 (D.C. Cir. 2014); *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).

## ANALYSIS

An agency's decision may be deemed arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence

6

before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. *State Farm*, 463 U.S. at 43. Absent a "strong showing of bad faith or improper behavior," the Court's review should solely be based on the administrative record. *Theodore Roosevelt Conservation P'ship v. Salazar*, 616 F.3d 497, 514 (D.C. Cir. 2010), quoting *Commercial Drapery Contractors, Inc. v. United States*, 133 F.3d 1, 7 (D.C. Cir. 1998). Plaintiff has not pointed to facts that would give rise to an inference of bad faith or improper behavior, so the Court's review is limited to the administrative record in this case. [4]

In making its decision to deny plaintiff's appeal, the Board considered the Plan's records, the Settlement Agreement, and the relevant statutory and plan provisions. AR 2–5; Reply at 1. The Plan's records showed that PBGC had informed plaintiff that his initial monthly benefit of $3,502.89 was merely an *estimated* benefit determination for what he was owed from April 1, 2011 until PBGC calculated its final benefit determination, and that any overpayment would be recouped through a reduction of future benefits. AR 237. The Settlement Agreement also expressly anticipated that plaintiff would receive a final benefit determination from PBGC in the future, and on August 12, 2019, PBGC informed plaintiff of the final determination of a monthly benefit of $3,210.17. AR 150, 155. The Board considered this evidence and explained that PBGC had been paying plaintiff his monthly benefit "on an estimated basis," which commenced as of his required beginning date, "as required by the Plan and the Code." AR 2, 4, 6. Therefore, the agency properly examined the relevant evidence to rationally conclude that plaintiff's final benefit of $3,210.17 was effective as of his RBD of April 1, 2011.

---

4       Plaintiff makes a conclusory allegation that defendant "used its superior bargaining power to coerce a settlement" with Plaintiff. Opp. at 5. Nothing in the record supports this allegation.

It was also reasonable for the Board to consider the terms of the Settlement Agreement, which offer a further explanation for its decision. Notably, the Settlement Agreement states that plaintiff cannot contest a reduction of his Plan benefit. AR 157. Plaintiff attempts to argue that he is not appealing the amount of the reduction and that he is only challenging the effective date of the reduction. Opp. at 4. The Court agrees with the Board's reasonable determination that contesting the date of the reduction is, in essence, a challenge to the reduction itself. AR 7.

But even if the Court accepted plaintiff's characterization of his appeal as a permissible challenge to the effective date of the reduction, plaintiff has not demonstrated that the Board's decision to uphold the use of his RBD as the starting point for the reduction was unreasonable; indeed, it is undisputed that the estimated benefit he had been receiving was for the period beginning as of that date, and that the agency ultimately determined that the estimate was too high. The Board also noted that the Settlement Agreement expressly stated that plaintiff's benefit would be "permanently reduced by . . . $175,000," and did not include any terms supporting plaintiff's argument that this reduction would not be effective until November 1, 2019. AR 6. Given that the record – and the Settlement Agreement – demonstrated that plaintiff had not yet been receiving a monthly benefit based on a final determination, the agency rationally concluded that his final benefit would be reduced as of his RBD.

Finally, the agency offered a rational basis for upholding the determination of plaintiff's net benefit overpayment. The Board noted that PBGC's proposed recoupment, a reduction of his benefit by 5.35%, was consistent with PBGC's regulations. AR 9. In addition, the Board's decision replicated the agency's calculation of plaintiff's $31,059.81 overpayment and directed

8

the Office of Benefits Administration to confirm its accuracy.  AR 8.[5]  The agency has provided a reasoned basis for its decision-making based on its expertise.

The Court is satisfied that the agency examined the relevant facts and explained its decision, and that its decision is supported by the record given the information available to the agency, the Settlement Agreement, and the relevant statutory provisions.  The agency's decision to deny plaintiff's appeal was not arbitrary and capricious and was supported by substantial evidence.

### CONCLUSION

Since the Court finds that the agency's decision was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law under the APA, the Court upholds the agency's decision as valid.  Therefore, the Court will grant defendant's motion for summary judgment.

AMY BERMAN JACKSON
United States District Judge

DATE:  November 18, 2022

---

5      Plaintiff asserted in his original appeal that the benefit reduction should have been effective as of November 1, 2019, but he now asserts that the reduction was effective April 1, 2020, the date the PBGC began paying this amount.  AR 30; Compl. ¶¶ 19, 28.  This discrepancy is immaterial given that the reduction is effective as of April 1, 2011, plaintiff's RBD.  Defendant notes that "consistent with PBGC's regulations, Plaintiff's Final Monthly Benefit is being further reduced to recoup the overpayment that was made to him from his RBD to the date he began receiving the amount in his formal benefit determination."  Mot. at 11.  The Court upholds the agency's determination with the understanding that the final monthly benefit will be further reduced accordingly for recoupment of plaintiff's overpayment.